UNITED STATES of America

v.

ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES, AND IMPROVEMENTS, Known As 154 Manley Road, Located In The Town of Burrillville, Rhode Island.

Civ. A. No. 93–0511ML.

United States District Court, D. Rhode Island.

Dec. 5, 1995.

---

Sheldon Whitehouse, Michael P. Iannotti, Office of the United States Attorney, Providence, RI, for Plaintiff.

Ernest J. Barone, North Providence, RI, for Defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter calls into question the constitutional boundaries on the government's authority to pursue civil forfeiture of an individual's property after having criminally prosecuted him, when both actions arise out of the same set of facts. The claimant contends that the government's pursuit of a civil forfeiture action, after it had already obtained a criminal conviction, is violative of the Double Jeopardy Clause of the Fifth Amendment. The claimant also contends that, even if the civil forfeiture action is not barred by the Double Jeopardy Clause, the forfeiture of his family residence violates the Excessive Fines Clause of the Eighth Amendment. The following facts and procedural history are garnered either from the court file or from the one-day bench trial heard before this court.

On September 13, 1993, a criminal complaint was filed against George Zapata (Zapata), the owner of property located at 154 Manley Road in Burrillville. On September 17, 1993, the real property was seized by Drug Enforcement Agents pursuant to the execution of a federal seizure warrant issued upon a finding of probable cause that the real property was used to facilitate violations under 21 U.S.C. § 841(a)(1) and was therefore subject to seizure and forfeiture pursuant to

21 U.S.C. § 881(a)(7). On the same day that the property was seized a complaint for civil forfeiture was filed. On October 8 [1], 1993, a federal grand jury returned an indictment against Zapata charging him with distribution of cocaine and possession of cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On November 23, 1993, Zapata pled guilty to both counts of the indictment. On January 27, 1994, Zapata was sentenced to a twenty-four month prison term. Based upon the criminal conviction the government moved for summary judgment on the civil forfeiture action on March 25, 1994. In response, Zapata filed an objection to the government's motion and his own motion for summary judgment. Both of the motions for summary judgment were subsequently denied.

At trial the parties stipulated that, as a result of another district judge's findings at Zapata's sentencing hearing, Zapata made three separate sales of narcotics to Kevin McCutcheon. The parties have not agreed concerning how many of the sales transpired at the subject property; the government contends that all three sales took place at the subject property while Zapata claims that only one sale occurred at his property.

The government did not present any witnesses at trial. Its evidence consisted of the above-mentioned stipulation and four documentary exhibits: (1) an affidavit from a Drug Enforcement Agency Task Force agent dated September 13, 1993, supporting the criminal complaint against Zapata; (2) another affidavit from the same agent dated September 17, 1993, submitted in support of the application to seize the real property; (3) the transcript of the sentencing hearing in the criminal matter; and, (4) the judgment and commitment order in that same case.

Zapata presented one witness at trial, his wife Laura. Mrs. Zapata testified that she married her husband in September of 1989. She testified that she resides at the property with her husband, their two children, and Zapata's son by a previous marriage. Mrs. Zapata stated that her only source of income is a monthly stipend from a government as-

sistance program. She stated that the only other asset that she and her husband own is a 1985 automobile. She averred that they do not have any checking or savings accounts. In addition to Mrs. Zapata's testimony, the claimant presented three appraisals of the property. The appraised values are $101,000, $99,000, and $82,500. Zapata also presented the warranty deed to the property dated March 24, 1983. Zapata is the sole owner of the property. The parties have stipulated that the amount of outstanding liens on the property is approximately $25,000.

At the sentencing hearing McCutcheon testified that he went to 154 Manley Road on three separate occasions and purchased one ounce of cocaine each time he "visited" Zapata. Zapata testified that he only sold one ounce of cocaine to McCutcheon on one occasion. During his testimony, Zapata did, however, admit that he had three ounces of cocaine stored in his backyard. The sentencing judge found McCutcheon to be the more credible witness and rejected Zapata's conflicting testimony. The sentencing court found that on two prior occasions Zapata sold two ounces of cocaine to McCutcheon. Based upon the findings of the sentencing judge, the application of the dictates of res judicata, and a fair reading of the sentencing hearing transcript, this court concludes that Zapata sold three ounces of cocaine from 154 Manley Road to McCutcheon. *See Gonzalez v. Banco Central Corp.,* 27 F.3d 751 (1st Cir.1994) (outlining the elements of res judicata); *Gebhart v. Hunter,* 184 F.2d 644, 645 (10 Cir.1950).

Zapata raises two arguments challenging the civil forfeiture proceeding. First, Zapata argues that since he has already been placed in jeopardy as a result of the criminal proceeding the subsequent civil forfeiture proceeding is barred by the Double Jeopardy Clause. Zapata bases his double jeopardy argument on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v.*

---

**1.** Although in its memo the government avers that the indictment was returned on October 3, 1993, the docket reflects that the indictment was filed on October 8, 1993.

*Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). Zapata also claims that, even if the civil forfeiture proceeding is not barred by the Double Jeopardy Clause, the civil forfeiture of his home, valued at between $82,000 and $101,000, is excessive under the circumstances and consequently violates the Excessive Fines Clause of the Eighth Amendment.

## I.

### Double Jeopardy & Civil Forfeiture Introduction and Review of Applicable Case Law

The Double Jeopardy Clause of the Fifth Amendment "represents a fundamental ideal in our constitutional heritage." *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause protects a defendant against three distinct governmental abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Halper,* 490 U.S. at 440, 109 S.Ct. at 1897. In the context of multiple punishments, the double jeopardy bar applies if the two offenses for which the defendant is tried or punished violate the "same elements" test. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The same elements test focuses on "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). The Clause is not limited to "life or limb" sanctions; the Clause also applies to imprisonment and monetary penalties. *See e.g., Halper,* 490 U.S. 435, 109 S.Ct. 1892 (1989). The protections of the Clause cannot be invoked until the defendant has been first placed in jeopardy. *Crist v. Bretz,* 437 U.S. 28, 32–33, 98 S.Ct. 2156, 2159–60, 57 L.Ed.2d 24 (1978). Once the protections of the Clause have been invoked "it is only the second proceeding that is constitutionally endangered, for the Clause's basic design is 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *United States v. Pierce,* 60 F.3d 886, 889 (1st Cir.1995), *petition for cert. filed,* —— U.S.L.W. —— (U.S. Oct. 19, 1995) (No. 95–6474) (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). Multiple punishments are permissible if imposed in the same proceeding, however multiple punishments are barred if they are imposed in separate proceedings. *See Halper,* 490 U.S. at 450–51, 109 S.Ct. at 1902–03; *Missouri v. Hunter,* 459 U.S. 359, 369, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983); *United States v. Ramirez–Burgos,* 44 F.3d 17 (1st Cir. 1995).

In order to determine whether the government's actions violate the Double Jeopardy Clause, this court must consider two distinct queries: (1) whether civil forfeiture commenced under 21 U.S.C. 881 § (a)(7) constitutes punishment, and, (2) whether the civil forfeiture action and Zapata's criminal prosecution constitute separate proceedings. *See Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937 (1994); *Halper,* 490 U.S. 435, 109 S.Ct. 1892 (1989). If the answer to both of these questions is yes, the government has impermissibly placed Zapata twice in jeopardy.[2]

In order to place the claimant's argument in proper perspective, an outline of the United States Supreme Court precedent upon which he relies is necessary. This court's analysis of those cases will be supplemented by the pertinent case law from this circuit. The applicable cases will be presented in chronological order in an effort to synthesize

---

**2.** The government contends that the criminal and civil actions are composed of separate elements and consequently the double jeopardy bar would not apply. *See Blockburger,* 284 U.S. 299, 52 S.Ct. 180 (1932); *Dixon* —— U.S. ——, 113 S.Ct. 2849 (1993). This court summarily rejects the government's position. Section 881(a)(7) is premised upon a violation of section 801 et. seq. and subsection (a)(7) specifically provides for the forfeiture of any property used to facilitate a violation of the chapter. Any forfeiture pursuant to subsection (a)(7) requires a violation of the controlled substance statute. The civil forfeiture action and the criminal prosecution address the same violation of identical laws. *See Oakes v. United States,* 872 F.Supp. 817, 824 (E.D.Wash. 1994).

from those holdings the law controlling the instant case.

In *Halper*, the United States Supreme Court faced the query of whether a civil sanction could constitute punishment for purposes of double jeopardy analysis. *Halper*, 490 U.S. at 443, 109 S.Ct. at 1898. In *Halper*, a manager of a company which provided medical services was convicted of submitting false Medicare claims for government reimbursement, and as a result, was sentenced to prison and fined $5,000. *Id.* at 437, 109 S.Ct. at 1896. After the criminal conviction Halper was subjected to civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–3731. *Id.* at 438, 109 S.Ct. at 1896. In determining whether the subsequent civil proceeding constituted punishment and therefore violated the Double Jeopardy Clause, the *Halper* Court held that the labeling of a sanction as criminal or civil is not of "paramount importance." *Id.* at 447, 109 S.Ct. at 1901. "It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, both punitive and remedial goals may be served by criminal penalties." *Id.* The Court noted that a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the particular case "serves the goals of punishment." *Id.* at 448, 109 S.Ct. at 1902.

> "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, *is punishment*, as we have come to understand the term.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added).

The *Halper* Court limited its holding to the "rare case" where the sanction is overwhelmingly disproportionate to the damages incurred as a result of the offender's conduct. *Id.* at 449, 109 S.Ct. at 1902.

This circuit first interpreted *Halper*, in the 21 U.S.C. § 881 forfeiture context, in *United States v. A Parcel Of Land With a Building Thereon at 40 Moon Hill Road*, 884 F.2d 41 (1st Cir.1989). In *40 Moon Hill Road* the appellants were convicted in Massachusetts state court for the possession and intent to manufacture or distribute marijuana. *Id.* at 42. Based upon the state criminal conviction the United States government was granted summary judgment on a federal forfeiture action and the appellants were forced to forfeit certain real estate. *Id.* The owners of the real estate appealed and, based upon *Halper*, raised both a double jeopardy and a proportionality argument in challenging the federal forfeiture. *Id.* at 42–43.

The First Circuit held that *Halper* was inapplicable to the appellant's position for three reasons. *Id.* at 43. The *40 Moon Hill Road* court held that the Double Jeopardy Clause did not apply to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because the forfeiture was not essentially criminal in character but was "'predominantly civil in nature.'" *Id.* (quoting *United States v. $250,000 in U.S. Currency*, 808 F.2d 895, 900 (1st Cir.1987)). "Only when a particular forfeiture proceeding is 'essentially criminal in character' does the Double Jeopardy Clause apply." *Id.* (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984)). The court also noted that because the two proceedings were brought by separate sovereigns a double jeopardy analysis was inapplicable. *Id.* Last, the court held that forfeiture of the property was a justifiable means to remedy the injury to the government "hence the forfeiture would be unlikely to constitute a 'punishment.'" *Id.*

> "The ravages of drugs upon our nation and the billions the government is being forced to spend upon investigation and enforcement—not to mention the costs of drug-related crime and drug abuse treatment, rehabilitation, and prevention—easily justify a recovery in excess of the strict value of the property actually devoted to growing the illegal substance...." *Id.* at 44.

The court concluded that "the civil forfeiture proceeding under 21 U.S.C. § 881(a)(7)

would ... not constitute a 'punishment' for purposes of the Double Jeopardy Clause." *Id.* at 44; *see also United States v. One Parcel of Real Property With Buildings, Appurtenances and Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, Rhode Island,* 960 F.2d 200, 206 (1st Cir.1992) (noting that the First Circuit has "consistently recognized that section 881 forfeitures are civil in nature").

Subsequent to *Halper, 40 Moon Hill Road,* and *Harbor Neck, New Shoreham, Rhode Island* the United States Supreme Court decided *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin* the defendant pled guilty to state drug charges and shortly thereafter the United States government filed a civil forfeiture action pursuant to 21 U.S.C. § 881. *Id.* at ——, 113 S.Ct. at 2803. The Supreme Court was faced with the question of whether forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) was punishment and consequently subject to the Excessive Fines Clause of the Eighth Amendment. *Id.* at ——–——, 113 S.Ct. at 2803–06. After an exhaustive historical analysis of forfeiture, the *Austin* Court concluded that forfeiture proceedings "have been understood, at least in part, as punishment." *Id.* at ——, 113 S.Ct. at 2810. " 'The notion of punishment, as we commonly understand it, cuts across the division between the civil and criminal law.' " *Id.* at ——, 113 S.Ct. at 2805 (quoting *Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901). The *Austin* Court noted that the query was not whether forfeiture under § 881 was civil or criminal, but whether it was punishment. *Id.* at ——, 113 S.Ct. at 2806. In light of both the historical and current understanding of forfeiture, the *Austin* Court, based on the *Halper* decision, could not conclude that forfeiture under 21 U.S.C. 881 §§ (a)(4) and (a)(7) served "solely a remedial purpose." *Id.* at ——, 113 S.Ct. at 2812. Consequently, the *Austin* Court concluded that "forfeiture under [21 U.S.C. §§ 881(a)(4) and (a)(7) ] constitutes 'payment to a sovereign as *punishment* for some offense,' ... and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id.* at ——, 113 S.Ct. at 2812 (emphasis added) (quoting *Browning–Ferris Industries v. Kelco Dispos-*

al, *Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)).

The First Circuit has commented on the *Austin* decision. *See McNichols v. Commissioner of Internal Revenue,* 13 F.3d 432, 434 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994). In *McNichols* the petitioner was assessed income tax deficiencies after he pled guilty to a number of criminal offenses. *Id.* at 433–34. The petitioner claimed, based upon *Halper* and *Austin,* that any assessment on property already forfeited to the government constituted multiple punishments and was therefore barred by the Double Jeopardy Clause. *Id.* at 434. The *McNichols* court noted that the Supreme Court in *Austin* found that "historically forfeiture was viewed as a *punishment.*" *Id.* (emphasis added). Additionally, the First Circuit observed that the *Austin* Court

> "found that because Congress 'has chosen to tie forfeiture directly to the commission of drug offenses' the forfeiture statutes were *punitive* in nature, and were 'subject to the limitations of the Eighth Amendment's Excessive Fines Clause.' " *Id.* (emphasis added) (quoting *Austin,* —— U.S. at ——, 113 S.Ct. at 2812).

The *McNichols* court, however, refused to extend *Austin,* a civil forfeiture case under an excessive fines analysis, to the petitioner's tax argument. *Id.* at 434–35.

The *McNichols* court also commented on *Halper* and its double jeopardy analysis. *Id.* at 435. In what appeared to be a "refinement" of the *40 Moon Hill Road* opinion, the *McNichols* court stated that the protections of the Double Jeopardy Clause were intrinsically personal and its violation could be identified by assessing the character of the sanction imposed. *Id.* at 435.

> "[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individ-

ual case serves the goals of punishment." *McNichols,* 13 F.3d at 435.

Less than a year after the *Austin* decision the United States Supreme Court decided *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth Ranch* the United States Supreme Court held that a state tax on the possession of illegal drugs assessed after the state of Nevada had already imposed a criminal penalty for the same conduct was punishment and therefore violated the Double Jeopardy Clause. *Id.* at ——, 114 S.Ct. at 1948. The question before the Court was whether the state tax had "punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." *Id.* at ——, 114 S.Ct. at 1945. "A defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding." *Id.* The Court specifically noted that the state could collect the tax on the possession of marijuana if it had not previously punished the taxpayer for the same offense, or if it had assessed the tax in the same proceeding that resulted in the conviction. *Id.* The Court held that the state tax was a second punishment for the same conduct, imposed in a separate proceeding, and consequently violated the Double Jeopardy Clause. *Id.* at ——, 114 S.Ct. at 1948.

Subsequent to the Supreme Court triad of *Halper, Austin,* and *Kurth Ranch* several district courts within this circuit have broached the issue of double jeopardy and 21 U.S.C. § 881. *See United States v. All Funds, Monies, Securities, Mutual Fund Shares, and Stocks,* 162 F.R.D. 4 (D.Mass. 1995); *United States v. Lane,* 891 F.Supp. 8 (D.Maine 1995); *United States v. One Rural Lot Located at Flamboyan St. Los Manantiales Sector,* 902 F.Supp. 18 (D.Puerto Rico 1995); *United States v. Parcel of Land, Buildings, Improvements and Appurtenances Located at 167 Woodland Road,* No. 94–10851–RWZ, 1994 WL 707129 (D.Mass. December 2, 1994).[3]

In *167 Woodland Road* the claimant was indicted in a state court on various drug offenses. 1994 WL 707129 at *1. In addition to the state indictment the United States government commenced a civil forfeiture proceeding against the claimant's property. *Id.* Subsequent to the commencement of the forfeiture proceeding, the United States government notified the claimant that a grand jury was investigating his activities and moved the court to stay the forfeiture proceeding pursuant to 21 U.S.C. § 881(i). *Id.* Rather than argue against the stay, the claimant offered the government a judgment and an order of forfeiture which granted the government full relief. *Id.* The government, however, opposed the entry of judgment and continued to seek the stay. *Id.* In commenting on the reason why the government opposed the entry of judgment, the court stated that "[b]oth parties agree on the reason [why the claimant was conceding the forfeiture]. *Jeopardy may attach at the conclusion of the civil forfeiture action, thereby precluding the government from going forward on its related criminal case against claimant."* *Id.*

In *All Funds, Monies, Securities,* the claimant was indicted by a federal grand jury on narcotics charges. 162 F.R.D. at 4–5. The criminal indictment specifically identified the defendant assets as forfeitable. *Id.* at 5. A civil forfeiture action was ordered stayed while the government pursued the criminal indictment against the claimant. *Id.* The claimant then filed a motion to lift the stay. *Id.* The government argued that the stay preserved scarce judicial resources because it contended it would be a waste of judicial resources for the civil forfeiture action and the criminal forfeiture claims to be heard by separate judges in the same district. *Id.* at 6. The court found the government's position to be "a bit disingenuous" explaining that it was the government who "sought the forfeiture of these assets in two separate proceedings." *Id.* The court noted that the government was trying to enjoy "two bites at the forfeiture apple and avoid[ ] double jeop-

---

**3.** This court is aware of First Circuit Local Rule 36.2(b)6 regarding the citation of unpublished decisions. This court is not citing any unpublished decision for precedential value, but is only citing the decision to show that the issue now before this court has been raised by other district courts in this circuit.

ardy concerns." *Id.* at 6–7. In lifting the stay the court did not decide the particular query of whether the two parallel actions were barred by double jeopardy, however, the court did cite *167 Woodland Road* for the premise that jeopardy may attach at the conclusion of a civil forfeiture action. *Id.* at 7.

Unfortunately, *Lane,* like *167 Woodland Road* and *All Funds, Monies and Securities,* did not answer the specific inquiry now before this court. In *Lane* the defendant claimed that jeopardy attached as a result of a previous civil forfeiture action and requested that the court dismiss pending criminal charges against him. *Id.* at 9. The court found, however, that because the defendant was never a party to the civil forfeiture action jeopardy never attached and it "need not decide ... whether requiring a defendant to stand trial in a criminal prosecution, after defending an in rem civil forfeiture, violates the Double Jeopardy Clause." *Id.* at 10–11.

In *One Rural Lot* the claimant pled guilty to one count of possession with intent to distribute cocaine. 902 F.Supp. at 19. Subsequent to his plea and sentence the government and claimant filed a stipulation for consent judgment on a civil forfeiture action that had been stayed pending the outcome of the criminal case. 902 F.Supp. at 19. Several months after the court had approved the stipulation, the claimant filed a motion requesting relief from judgment alleging that the civil judgment should be expunged because it violated the Double Jeopardy Clause. 902 F.Supp. at 19. The claimant averred that it was "constitutionally impermissible for the government to impose a sanction in this case after he had plead guilty and had been sentenced in the criminal case." 902 F.Supp. at 19.

The *One Rural Lot* court set out the Supreme Court holdings in *Halper, Austin,* and *Kurth Ranch* and then noted that

"[a]fter these decisions, a defendant's double jeopardy claim in the context of a criminal proceeding preceded by a civil forfeiture case based upon the same conduct for which the defendant was prosecuted, or vice versa, is to be expected. Whether the constitutional protection will

be afforded is by no means clear. *Halper* and *Austin* have unleashed a conflict in the circuits." *One Rural Lot,* 902 F.Supp. 18, 20.

The *One Rural Lot* court, like the others before it, failed to reach the double jeopardy issue and disposed of the claimant's motion on other grounds. 902 F.Supp. 18, 22–23.

The First Circuit, in *United States v. Pierce,* 60 F.3d 886 (1995), *petition for cert. filed,* —— U.S.L.W. ——, (U.S. Oct. 19, 1995) (No. 95–6474), provides guidance on the issue now before this court. In *Pierce* the defendant was convicted of conspiracy to possess cocaine with the intent to distribute, and, carrying a firearm during and relation to a drug trafficking crime. *Id.* at 887. Subsequent to the conviction, but prior to sentencing, the United States government moved for civil forfeiture of $3,333.50 seized from Pierce at the time of his arrest. *Id.* at 888; *see also* 21 U.S.C. § 881(a)(6) (subjecting to civil forfeiture money intended to be furnished in exchange for a controlled substance). A Magistrate judge issued the order of forfeiture for $2,333.50 and judgment was entered. *Id.* at 888. On the same day that the civil judgment entered Pierce moved to dismiss the criminal case based upon double jeopardy grounds. *Id.* The trial court denied Pierce's motion and subsequently, after the civil judgment entered, sentenced the defendant. *Id.*

In his appeal Pierce claimed that the Double Jeopardy Clause precluded the government from further pursuing his *criminal prosecution* once judgment had entered in the civil action. *Id.* at 889. Pierce claimed that the civil and the criminal proceedings were separate proceedings, arising out of the same fact pattern, instituted by the government for penal purposes. *Id.* Pierce argued that, for double jeopardy purposes, the moment of punishment "control[led]" and consequently the issue was "not so much which jeopardy attaches first as which jeopardy is first complete." *Id.* at 889–90. Pierce contended that because jeopardy first "became complete" and punishment was first imposed in the civil proceeding the punishment in the criminal proceeding was precluded by the Double Jeopardy Clause. *Id.* at 890. After reviewing how several other circuits had

treated the civil forfeiture/criminal prosecution double jeopardy-question the First Circuit summarized the government's position by stating that

> "*the government responds that the Double Jeopardy Clause, if violated, would bar only the civil forfeiture proceeding, and not Pierce's criminal prosecution. Because we agree with this last argument,* we reject Pierce's double jeopardy challenge without deciding whether the forfeiture action was a separate penal proceeding. *Id.* (emphasis added).

In rejecting Pierce's argument the court noted that the protections of the Double Jeopardy Clause are not invoked until an individual has been first placed in jeopardy. *Id.* 889. Once jeopardy has attached, however, it is only the second proceeding that is "constitutionally endangered, for the Clause's basic design is 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *Id.* (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). Since Pierce's criminal jury was sworn several months prior to the inception of the civil forfeiture proceeding any jeopardy arising out of the institution of the civil proceeding could only be "seen as imperiling [the civil] proceeding" and not the criminal prosecution. *Id.* The court reasoned that Pierce's theory ignored the proposition that the Double Jeopardy Clause not only protects against successive punishments; it also protects against successive prosecutions. *Id.* at 890.

> "The Double Jeopardy Clause is a shield against the oppression inherent in a duplicative, punitive proceeding; it is not a tool by which a defendant can avoid the consequences of the proceeding in which jeopardy first attached. The law of double jeopardy is quite complicated, and often (as here), the question whether a second prosecution violates the Clause is a close one." *Id.* at 890.

The court concluded that Pierce's double jeopardy challenge was meritless. *Id.*

Unlike Pierce, Zapata is challenging a civil forfeiture of his property which would be finalized some twenty-two months after he was sentenced on the criminal matter. Zapata is not challenging the imposition of the criminal penalty. Both parties agree that jeopardy attached as a result of the criminal matter. Zapata argues that the subsequent forfeiture proceeding is constitutionally barred because he has already been punished in the criminal case.

The District Court of Vermont has recently issued an opinion that this court finds enlightening. *See United States v. Brophil,* 899 F.Supp. 1257 (D.Vt.1995). In *Brophil,* a criminal narcotics proceeding commenced against the defendant on February 14, 1990, with a criminal complaint, and, on August 30, 1990, an indictment. *Id.* at 1258. The defendant failed to appear at his arraignment and a warrant issued for his arrest. *Id.* at 1258. On February 15, 1990, the government filed a civil forfeiture complaint under 21 U.S.C. 881(a)(7). *Id.* at 1258. The civil forfeiture action proceeded in the defendant's absence because he was a fugitive. *Id.* at 1258. On January 30, 1991, a final order of forfeiture entered. *Id.* at 1258. The defendant was subsequently apprehended on December 20, 1993, and entered into an agreement with the government to plead guilty to a narcotics charge, and, on June 20, 1995, he was sentenced. *Id.* at 1258.

Prior to the imposition of his sentence the defendant filed a motion to dismiss the criminal charge based upon his assertion that the criminal prosecution violated the Double Jeopardy Clause. *Id.* at 1258. The *Brophil* court found the defendant's argument to be without merit and held that because the defendant never appeared at the civil forfeiture hearing jeopardy never attached during the forfeiture matter and consequently the criminal proceeding was not constitutionally endangered. *Id.* at 1259–60; *see also United States v. Brophil,* 894 F.Supp. 166 (D.Vt. 1995). Subsequent to this decision the defendant filed a motion for reconsideration, again asserting that the government violated the Double Jeopardy Clause because it used two separate proceedings to punish him twice for one offense. *Brophil,* 899 F.Supp. at 1259–60. In a convincing change of heart, the court, citing *Halper, Austin,* and *Kurth Ranch,* reversed its earlier decision and held

that the criminal prosecution was barred by double jeopardy.[4] *Id.* at 1267–68.

The *Brophil* court started its double jeopardy analysis with a two-prong dissection: whether the civil forfeiture action and the criminal proceeding were separate proceedings and whether the civil forfeiture constituted punishment. *Id.* at 1260–61. "[T]he Supreme Court [in *Austin*] has held that such civil forfeiture [under 21 U.S.C. § 881(a)(7)] proceedings do constitute punishment ... [and] the protections of the Double Jeopardy Clause should apply to one like [the defendant] whose property the Government has seized in that manner." *Id.* at 1262. *Brophil* stated that Supreme Court precedent "firmly" established that civil forfeiture under § 881(a)(7) was punishment within the meaning of the Double Jeopardy Clause. *Id.* at 1268:

> "Thus, since section 881(a)(7) serves nonremedial purposes of retribution and deterrence, civil forfeiture actions under the statute constitute punishment within the meaning of the Double Jeopardy Clause. Because the Government seized [the defendant's property] pursuant to § 881(a)(7),

the civil forfeiture action punished [the defendant] for purposes of double jeopardy." *Id.* at 1268.

Furthermore, the *Brophil* court easily concluded that the civil forfeiture action and the criminal prosecution were separate proceedings. *Id.* at 1265–67. The court noted that the criminal proceeding commenced under a Magistrate while the civil complaint commenced under a District Judge. *Id.* at 1265–66. The court also recognized that the final forfeiture order was entered on January 30, 1991, however, the defendant pled to the criminal charges on November 10, 1994, and was sentenced on June 20, 1995. *Id.* at 1265–66. *Brophil* found that the criminal and civil actions were separate actions started and resolved at different times, before different fact finders, presided over by different district judges and resolved by separate judgments. *Id.* at 1265–66. Consequently, because the *Brophil* court found that a forfeiture action under 21 U.S.C. § 881(a)(7) was punishment, not imposed in the same proceeding as the initial criminal matter, the forfeiture action violated the Double Jeopardy Clause.[5] *Id.* at 1267–68.

---

**4.** In the court's first decision, *see United States v. Brophil*, 894 F.Supp. 166 (D.Vt.1995), the court relied upon *United States v. Torres*, 28 F.3d 1463 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), and ruled that because the defendant had never appeared as a party in the forfeiture proceeding jeopardy had not attached. In its "second look" at *Brophil* the court determined that its reliance upon *Torres* was misplaced because *Torres* relied upon an "analytically distinct successive prosecution case to establish its civil forfeiture rule" and the fact that the *Torres* decision was inconsistent with "recent United States Supreme Court authority", most notably *Halper, Austin,* and *Kurth Ranch*. *Brophil*, 899 F.Supp. at 1261–62.

**5.** This court notes that there is a split among the circuits that have dealt with this particular question. *See United States v. Ursery*, 59 F.3d 568 (6th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3161 (U.S. Aug. 28, 1995) (No. 95–435) (citing *Halper* and *Austin* and concluding that civil forfeiture is punishment and jeopardy attached when a § 881(a)(7) civil forfeiture consent judgment entered); *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), *amended and rehearing denied*, 56 F.3d 41 (1995), *petition for cert. filed*, 64 U.S.L.W. 3161 (U.S. Aug. 28, 1995) (No. 95–436), (citing *Austin* and concluding that civil forfeiture under §§ 881(a)(6) and 981(a)(1)(A) is punishment and the Double Jeop-

ardy Clause is violated by a separate criminal prosecution and a civil forfeiture action). Other circuits have concluded that if the criminal and civil forfeiture proceedings are part of one "single coordinated proceeding" the protections of the Double Jeopardy Clause are not violated. *See United States v. One Single Family Residence*, 13 F.3d 1493 (11th Cir.1994) (18 U.S.C. § 1955 forfeiture of a house was penalty according to *Austin*, however, the criminal prosecution and the overlapping forfeiture action were one single coordinated proceeding and multiple punishments were not barred by the Double Jeopardy Clause); *United States v. Millan*, 2 F.3d 17 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994) (court did not cite *Austin*, and did not decide whether civil forfeiture action under § 881 was punishment because the government employed a single proceeding to prosecute the criminal and civil actions and consequently the Double Jeopardy Clause did not apply); *but see United States v. Tilley*, 18 F.3d 295 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994) (Double Jeopardy Clause did not apply to § 881(a)(6) forfeitures of drug proceeds because according to an *Austin* analysis forfeiture of *drug proceeds* was not punishment). The Seventh Circuit has suggested that problems could arise by commencing a separate criminal prosecution and a civil forfeiture proceeding. *See United States v. Torres*, 28

## II.

### *Is Forfeiture Pursuant To 21 U.S.C. § 881(a)(7) Punishment?*

■ The government contends that Zapata's property was used to facilitate certain cocaine transactions and therefore the property was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7). Section 881(a)(7) provides forfeiture of

"[a]ll real property, including any right, title, and interest (including leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property should be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

It is important to note that this is not a drug proceeds case pursuant to 21 U.S.C. § 881(a)(6).[6] This court is aware that *Halper*, *Austin*, and *Kurth Ranch* direct that determining whether a civil forfeiture is a punishment is a fact-intensive exercise that must be undertaken on a case by case basis.[7] In light of the specific facts of this case, controlling Supreme Court precedent, especially *Austin*, and controlling First Circuit case law, this court determines that, in this particular instance, forfeiture under 21 U.S.C. § 881(a)(7) is punishment.

The particular facts of *Austin* play a prominent role in this court's determination of whether forfeiture according to 21 U.S.C. § 881(a)(7) is punishment. In *Austin*, after the defendant pled guilty and was sentenced pursuant to criminal drug charges, the government filed a civil forfeiture action under 21 U.S.C. §§ 881(a)(4) and (a)(7). *Austin*, — U.S. at ——, 113 S.Ct. at 2803. The *Austin* Court specifically framed its issue as whether forfeiture under §§ 881(a)(4) and (a)(7) was punishment. *Id.* at ——, ——— ——, 113 S.Ct. at 2806, 2810–12. *Austin* specifically noted that when Congress added subsection (a)(7) it recognized that " 'the traditional criminal sanctions of fine and imprisonment are inadequate to *deter* or *punish* the enormously profitable trade in dangerous drugs.' " *Id.* at ——, 113 S.Ct. at 2811 (emphasis added) (quoting S.Rep. No. 98–225, p. 191 (1983)). The *Austin* Court outlined the legislative history behind sections (a)(4) and (a)(7) and was unable to locate any authority that contradicted the historical understanding of forfeiture as punishment. *Id.* at ——, 113 S.Ct. at 2810. The Court noted that Congress' choice to include an innocent landowner defense in the sections revealed an intent to *punish* only those specifically involved in the drug trade. *Id.* at ——, 113 S.Ct. at 2811. *Austin* noted that the legislative history of subsection (a)(7) "characterized the forfeiture of real property as 'a powerful *deterrent*.' " *Id.* at ——, 113 S.Ct. at 2811 (emphasis added) (quoting S.Rep. No. 98–225, p. 195 (1983)). Additionally, the *Austin* Court rejected the government's argument that §§ 881(a)(4) and (a)(7) were remedial by noting the "dramatic variations in the value of conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7) undercut any [remedial-based] argument." *Id.*

F.3d 1463 (7th Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994) (noting that forfeiture and civil fines can be penalties and noting that after *Austin* and *Kurth Ranch* the government should be aware of the "hazards" of commencing separate criminal prosecutions and civil forfeiture proceedings). Subsequent to *Ursery* the Sixth Circuit issued *United States v. Salinas*, 65 F.3d 551 (6th Cir.1995), in which it held that although forfeiture of property tainted by drug dealing pursuant to 21 U.S.C. § 881(a)(7) was punishment, forfeiture of drug proceeds according to 21 U.S.C. § 881(a)(6) was not punishment.

**6.** 21 U.S.C. § 881(a)(6) provides for the forfeiture of "[a]ll moneys, ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange ..."

**7.** This court believes that the *Austin* Court may have replaced *Halper's* focus on whether "the sanction as applied in the *individual* case serves the goals of punishment" for a more global concentration on the impact of §§ 881(a)(4) and (a)(7) "as a whole." *Austin*, — U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14 (emphasis added).

at ——, 113 S.Ct. at 2812. " '[F]orfeiture of *property* . . . [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.' " *Id.* at ——, 113 S.Ct. at 2812 (emphasis added) (quoting *United States v. Ward*, 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980)).

The *Austin* Court concluded that even if forfeiture under § 881(a)(7) served *some* remedial goal it would still constitute punishment. *Id.*

" '[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Austin,* —— U.S. at ——, 113 S.Ct. at 2812 (emphasis added) (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901).

However, most convincing from the language of *Austin* is the Court's crystal clear holding. "We therefore conclude that forfeiture under [§§ 881(a)(4) and *(a)(7)* ] constitutes 'payment to a sovereign as *punishment* [8] for some offense.' " *Id.* at ——, 113 S.Ct. at 2812 (emphasis added) (quoting *Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)).

This court believes that *Austin, Halper,* and *Kurth Ranch* instruct that *40 Moon Hill Road* must be revisited. First, *40 Moon Hill Road* held that forfeiture pursuant to § 881(a)(7) was not punishment. *40 Moon Hill Road,* 884 F.2d at 43. This holding is diametrically opposed to *Austin*'s conclusion that forfeiture pursuant to 21 U.S.C. § 881(a)(7) provides for punishment. Second, in its *40 Moon Hill Road* opinion the First Circuit relied upon *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984),

for the proposition that "the doctrine of Double Jeopardy does not apply to a civil forfeiture proceeding like [21 U.S.C. § 881(a)(7) ]." *40 Moon Hill Road,* 884 F.2d at 43. However, *89 Firearms* held that the Double Jeopardy Clause did not apply to civil forfeiture proceedings only in cases where the forfeiture "could properly be characterized as remedial." *Austin,* —— U.S. ——, —— – —— n. 4, 113 S.Ct. 2801, 2804–05 n. 4. After *Austin*'s clear pronouncement that § 881(a)(7) is not remedial, any reliance upon *89 Firearms* for this proposition must give way. Based upon the unequivocal language, holding, and similar significant facts of *Austin,* read in conjunction with *Halper* and *Kurth Ranch,* in addition to this circuit's dicta noted in *McNichols* and *Pierce,* this court concludes that forfeiture under 21 U.S.C. § 881(a)(7) is punishment.[9]

### III.

#### *Separate or Simultaneous?*

Finding that the forfeiture of Zapata's real estate is punishment does not, however, end this court's analysis. The First Circuit has noted the difference between double jeopardy implications that arise as a result of as a simultaneous trial and as a result of successive trials. *See United States v. Ramirez–Burgos,* 44 F.3d 17 (1st Cir. 1995).

"In a simultaneous trial, the multiple punishment inquiry focuses on whether the legislature has authorized multiple punishments, as it may lawfully do. . . . In successive trials, on the other hand, 'the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding.' " *Id.* at 19 (quoting *Halper,* 490 U.S. at 451, 109 S.Ct. at 1903).

---

**8.** The Court has recently reiterated *Austin*'s punishment holding noting that "in *Austin* . . . we concluded that even the in rem civil forfeiture authorized by 21 U.S.C. §§ 881(a)(4) and (a)(7) is punitive in nature, so that forfeiture imposed under those subsections is subject to the limitations of the Eighth Amendment's Excessive Fine Clause." *Libretti v. United States,* —— U.S. ——, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995).

**9.** In addition to the authorities cited, this court agrees with the analysis of the issues as set out in *Brophil.* This court also notes that, after a plethora of research, it has found no case since *Austin* which has held that forfeiture pursuant to 21 U.S.C. § 881(a)(7) was *not* punishment.

The *Ramirez–Burgos* court cited *Halper* for the principle that a civil punitive proceeding following a criminal trial on the same set of facts violates the Double Jeopardy Clause. *Id.*

"The [*Halper*] Court nevertheless stated that its ruling did not prevent 'the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" *Id.* (quoting *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903).

Consequently, since this court has already determined that the forfeiture pursuant to § 881(a)(7) is punishment, a violation of the Double Jeopardy Clause would arise only if the forfeiture action and the criminal prosecution were separate and could not be characterized as a single coordinated proceeding.

■■■ There is no question that the same conduct supports both Zapata's criminal conviction and the civil forfeiture. To answer the query of whether Zapata faced separate proceedings or a single coordinated proceeding, the government urges this court to adopt the reasoning of *United States v. One Single Family Residence*, 13 F.3d 1493 (11th Cir. 1994), and *United States v. Millan*, 2 F.3d 17 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), while Zapata exhorts the court to embrace the rationale of *United States v. $405,089.23 United States Currency*, 33 F.3d 1210 (9th Cir.1994), *amended and rehearing denied*, 56 F.3d 41 (1995), *petition for cert. filed*, 64 U.S.L.W. 3161 (U.S. Aug. 28, 1995) (No. 95–436).

As noted above, *One Single Family Residence* was a forfeiture case under a gambling statute, 18 U.S.C. § 1955. 13 F.3d at 1494. In *One Single Family Residence* the civil forfeiture action was instituted by the government on October 11, 1990. *Id.* at 1494. The defendant was indicted on March 26, 1991, and convicted on October 30, 1991. *Id.* at 1494–95. On December 2, 1991, the government moved for summary judgment in the forfeiture action based upon the criminal conviction. *Id.* With sparse explanation of its reasoning the court held that the civil and criminal actions fell within "the contours of a single, coordinated prosecution" and did not violate the strictures of double jeopardy. *Id.* at 1499.

*Millan* was a civil forfeiture case under 21 U.S.C. § 881. 2 F.3d at 18. In *Millan* the defendants were indicted on narcotics charges on August 14, 1991. *Id.* The government instituted a civil forfeiture action on December 26, 1991. *Id.* On January 20, 1993, the defendants entered into an agreement with the government settling the forfeiture matter through a stipulation. *Id.* On February 23, 1993, the defendants moved to dismiss the criminal indictment based on the theory that the stipulation acted as a prior punishment for the same crimes for which they were indicted. *Id.* In concluding that the civil and the criminal actions were "but different prongs of a single prosecution" *Millan* noted that (1) the warrants for the civil seizures and the criminal arrests were issued on the same day, by the same judge, based on the same affidavit, (2) the stipulation involved both the seized properties and other properties named in the criminal indictment, and, (3) the defendants were aware of the criminal charges when they entered into the stipulation. *Id.* at 20. The *Millan* court noted that it was aware of the concerns that *Halper* raised regarding whether the government might act "abusively by seeking a second punishment when it is dissatisfied with the punishment levied in the first action." *Millan*, 2 F.3d at 20. The court concluded that the government was not acting "abusively" and that the civil and the criminal proceedings were "contemporaneous, and not consecutive." *Id.* It is significant to note that both *Millan* and *One Single Family Residence* were decided before the Supreme Court issued its *Kurth Ranch* opinion.

Zapata invites this court to adopt the reasoning of *$405,089.23 U.S. Currency*. In *$405,089.23 U.S. Currency* the defendants were indicted on June 12, 1991. 33 F.3d at 1214. The government instituted a civil forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981 on June 17, 1991. *Id.* The criminal case terminated with convictions on March 27, 1992. *Id.* Eight months

later, on December 4, 1992, the government filed a motion for summary judgment on the civil forfeiture action. *Id.*

The *$405,089.23 U.S. Currency* court found that the criminal prosecution and the civil proceeding could not be characterized as the same or parallel proceedings because they had been instituted at different periods, tried at different times before different fact finders, heard by two different district court judges, and resolved by separate judgments. *Id.* at 1216–17. In fact, the court stated that "[a] forfeiture case and a criminal prosecution would constitute the same proceeding only if they were brought in the same indictment and tried at the same time." *Id.* at 1216. The court also noted that because the district court followed the ordinary practice and held the civil forfeiture action in abeyance until the criminal matter concluded the government gained a significant tactical advantage. *Id.* at 1217.

> "[I]f [the government] succeeded in the criminal case it could obtain summary judgment based on the conviction (assuming of course that it had probable cause at the time it instituted the forfeiture action), while if it lost it could still seek forfeiture and urge that the more lenient standards applicable in civil proceedings applied.... We believe that such a coordinated, manipulative prosecution strategy heightens, rather than diminishes, the concern that the government is forcing an individual to 'run the gantlet more than once.' ... We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of 'single, coordinated prosecution.'" *Id.* (quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957)).

Although *$405,089.23 U.S. Currency* dealt with § 881(a)(6) and 18 U.S.C. § 981, its rationale regarding the protections afforded by the Double Jeopardy Clause in forfeiture proceedings is highly persuasive and is consistent with the analysis set forth in *Kurth Ranch.* The Supreme Court has indicated that, even when filed close in time, a civil proceeding characterized as inflicting a "punishment" and a criminal prosecution arising out of the same offense constitute two separate proceedings when brought separately and terminated at different times. *See Kurth Ranch,* —— U.S. at —— n. 21, 114 S.Ct. at 1947 n. 21.

This court notes that the criminal complaint and the civil forfeiture action were based upon separate affidavits, albeit from the same government agent. The actions were tried at different times, before different fact finders and will terminate (with this ruling) some twenty-two months apart from each other. These factors militate against finding that the two proceedings are contemporaneous or that they are a part of a single coordinated proceeding. Therefore, this court concludes that the civil and the criminal proceedings are separate actions. Because the civil forfeiture constitutes a punishment after jeopardy attached in the criminal case, the government is barred from pursuing the civil forfeiture action as a result of the protections afforded Zapata under the Double Jeopardy Clause.

> "The Court does not take lightly the dismissal of criminal charges against a defendant [or, as in this case, the dismissal of a civil forfeiture action] or the significant efforts undertaken by the Government to reduce drug abuse in this country. However, the protections of the Constitution apply to all citizens, and the [C]onstitution must never be made a casualty of the Government's war on drugs." *Brophil,* 899 F.Supp. at 1268.

Based upon this court's disposition of Zapata's double jeopardy argument it need not reach Zapata's excessive fine claim.

Consequently for the reasons stated, the civil forfeiture claim against Zapata must be dismissed as violative of the Double Jeopardy Clause.