NOT DESIGNATED FOR PUBLICATION

No. 122,859

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK MARTIN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; MICHAEL E. WARD, judge. Opinion filed July 30, 2021.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired,
assigned.

LEBEN, J.: Patrick Martin appeals the district court's denial of his claim that the
attorney who represented him in a murder trial provided constitutionally inadequate
assistance. Martin argues that his attorney's concession of likely guilt on a secondary
charge (aggravated child endangerment) wasn't in Martin's interests. But we agree with
the district court that this concession didn't prejudice Martin—there was strong evidence
in support of the child-endangerment charge.

We begin our discussion with a procedural overview. If a criminal defendant is convicted, he or she has the opportunity in a direct appeal to raise claims about trial errors that may have affected the outcome. If the defendant succeeds in the direct appeal, we generally send the case back for a new trial at which the errors can be avoided. If the defendant doesn't succeed in the direct appeal, the defendant can bring a habeas challenge raising other issues.

That's what has happened here: Martin lost his direct appeal, *State v. Martin*, No. 110,556, 2015 WL 5224697, at *1-3 (Kan. App. 2015) (unpublished opinion), and he then raised a habeas claim alleging that his court-appointed trial attorney hadn't provided adequate representation.

Well-established rules apply when a defendant seeks to set aside a conviction based on the claim that the defense attorney provided representation so ineffective that it was below constitutionally required standards. The defendant has the burden to show two things: (1) that the attorney's work was below minimum standards and thus constitutionally deficient; and (2) that the attorney's substandard work prejudiced the defendant. *Mattox v. State*, 293 Kan. 723, 725, 267 P.3d 746 (2011). The second part of that test ordinarily requires showing a reasonable probability that the result of the trial would have been different but for the attorney's substandard work. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Mattox*, 293 Kan. at 725-26. In sum, what is often called the *Strickland* test requires two showings— constitutionally deficient representation and prejudice to the defendant. If those showings are made, we set aside the conviction and send the case back for a new trial with proper representation for the defendant.

The charges against Martin arose out of events in Greenwood County. Martin drove with his wife and their 18-month-old daughter from Hamilton to Eureka in search of either gas money or methamphetamine, depending on whose trial testimony one

accepts. That led to a visit to another person, Dominick Angelo, in Severy. There, several people were involved in a physical altercation, and Martin stabbed Angelo, who died, several times. We set out the testimony of key witnesses in our opinion in Martin's direct appeal. *Martin*, 2015 WL 5224697, at *1-3.

The State brought three charges against Martin: (1) felony murder (a murder committed while also committing a felony, alleged here as the attempted possession of methamphetamine); (2) attempted possession of methamphetamine; and (3) aggravated child endangerment. On the murder charge, the State had an alternative charge, second-degree (intentional but not premeditated) murder, if the jury didn't convict Martin of felony murder. On the aggravated child-endangerment charge, the jury also had the option to convict Martin of a lesser (non-reckless) child endangerment. The jury convicted Martin of second-degree murder and aggravated child endangerment but acquitted him of the drug charge.

In closing argument, Martin's attorney essentially conceded guilt on the child-endangerment charge. He began by saying, "There is one thing that I . . . submit you should find Patrick Martin as guilty of and that is Count 3 [aggravated child endangerment]." A few moments later, he modified that to say that "at least I submit that it's reasonable for you to reach that conclusion" and that jurors would not be acting outside their role to mark guilty for both forms of child endangerment. But whether we call it a flat-out concession or something weaker, Martin's attorney didn't argue that Martin was innocent of that charge.

The attorney, Jay Witt, testified at an evidentiary hearing that he made the strategic decision that he'd have better credibility with the jury in arguing against the most-serious charge, felony murder, if he conceded this point. Neither Witt nor Martin, who also testified about his dealings with Witt, could recall for sure whether Martin

objected to this concession. Martin testified that Witt had told him right before closing argument that Witt planned to make this concession.

Martin argued to the district court—and again argues in this appeal—that Witt's decision to mostly concede the aggravated-child-endangerment charge fails on both of the *Strickland* standards. Martin argues that it's not minimally adequate representation and that it acted to his detriment. The same district judge who had presided over Martin's jury trial rejected both claims in a detailed written opinion. Because the district court conducted an evidentiary hearing, we must accept its factual findings if they are supported by substantial evidence. But whether the attorney's work met or fell below the *Strickland* requirements is a legal issue that we review independently, with no required deference to the district court. *Khalil-Alsalaami v. State*, 313 Kan. 472, Syl. ¶ 5, 486 P.3d 1216 (2021); *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

As for the first *Strickland* test, deficient performance, we're dealing with an attorney's choice of how best to defend the case. Usually, an attorney's strategic decisions are essentially unchallengeable if the attorney made an informed decision based on a thorough investigation of the facts and applicable law. The decision must be reasonable, and it falls below minimum constitutional standards only if no competent attorney would have adopted that strategy. *Wilson*, 51 Kan. App. 2d at 14-15.

Here, though, there's a bit of a twist: can an attorney provide adequate representation while conceding guilt on a lesser charge? Some courts have said that can be a reasonable defense strategy. E.g., *United States v. Pledger*, 887 F. Supp. 1400, 1405-07 (D. Kan. 1995). But our Supreme Court has held that a defendant generally has a Sixth Amendment right to maintain a not-guilty plea. See *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000). Our case isn't like *Carter*, though; there, the defendant had strenuously objected to defense counsel's trial strategy. See 270 Kan. at 431-33.

But our Supreme Court has also considered a case more like Martin's, *Edgar v. State*, 294 Kan. 828, 283 P.3d 152 (2012). There and here, the defendant was charged with both murder and either child abuse or child endangerment. In *Edgar*, as in Martin's case, the defense attorney made comments in closing argument that seemed to invite conviction on a lesser charge while arguing against a murder conviction. 294 Kan. at 834. But it wasn't clear in *Edgar*, where there was no testimony from the attorney and defendant about any communication about this defense strategy. 294 at 839. So our Supreme Court decided the claim of inadequate representation by analyzing only the *Strickland* prejudice prong and not deciding whether conceding a lesser point or charge was deficient performance. 294 Kan. at 839-46.

We adopt that same approach here. Under the *Strickland* prejudice standard, Martin has not shown that there's any reasonable probability the trial's outcome would have been different. A reasonable probability in this context is one sufficient to undermine confidence in the proceeding's outcome. *Khalil-Alsalaami*, 313 Kan. at 486. Martin has not made that showing.

First, there was ample evidence of aggravated child endangerment (in this case, recklessly causing or permitting the child to be in a situation where her life, body, or health was endangered). In our opinion on Martin's direct appeal, we noted the strength of this evidence:

> "Martin testified that he was 'buzzed pretty good' that afternoon before he took his wife and child for the drive from Hamilton to Eureka. He also testified that on the way from Eureka to Severy, when [another person] was driving, all three of the adults were drinking. When taken to the hospital for treatment shortly after he stabbed Angelo, Martin tested at more than twice the legal limit for drunk driving. No reasonable person would have difficulty recognizing that driving drunk with an 18-month-old child in the car endangers the child." *Martin*, 2015 WL 5224697, at *8.

5

That's what the prosecutor emphasized in closing argument at Martin's trial: "He's driving around recklessly, not necessarily how he's driving, but by his intoxication, he puts that child at risk." The district court found that the evidence supported a finding that "Martin not only recklessly endangered his daughter by drinking and driving, but also by dragging her around Greenwood County in his failed effort to locate methamphetamine."

Martin makes one factual argument about the child-endangerment charge: he suggests there wasn't evidence that he was the driver on the trip from Hamilton to Eureka. At the evidentiary hearing on his habeas claim, Martin claimed he wasn't driving, but he doesn't cite any testimony from the jury trial on his criminal charges that someone else drove. The trial testimony showed that Martin and Dawn took his pickup truck, and he testified that he "told Dawn to load up" because "[w]e're going to Eureka to try to find some money." Dawn also testified it was Martin's decision to drive from Hamilton to Eureka. But whether Dawn was driving or Martin was, both were drinking heavily, and each of them went along with having their daughter ride with them. Dawn testified that she had had some shots of whiskey and was drinking her fourth beer; she said Martin was obviously drunk.

Second, if we assume Witt had the ability to make this type of strategic decision, it *improved* Martin's chances of successful outcomes on the other charges. Indeed, the jury didn't convict Martin of attempted possession of methamphetamine and didn't convict him of the charge with the greatest potential penalty, felony murder. So if Martin's claim of prejudice is that conceding that the jury could easily convict him on the child-endangerment charge made it more likely for him to be convicted on the *other* charges, we see no basis that this happened. If anything, Witt's approach somewhat succeeded (acquittal on the drug charge, conviction on a lesser murder charge); there's no basis to say it led to a worse result for Martin.

6

We recognize that Martin has argued that we should apply a different standard than *Strickland*. When a defendant is completely denied the assistance of counsel at a critical stage of a criminal proceeding, the court may presume that prejudice occurred. *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). But in *Edgar*, a case much like Martin's, our Supreme Court applied the *Strickland* reasonable-probability standard for determining prejudice, not the *Cronic* presumption. We therefore apply it here too. Martin's is not a case in which his attorney abandoned him or had an irreconcilable conflict of interest.

Before the district court, Martin also argued that Witt had been deficient by not talking in closing argument about the voluntary-intoxication defense. The court instructed the jury that Martin's intoxication could be seen as a defense if it meant that he could not form the conscious intention to kill Angelo. But Martin hasn't pursued this argument on appeal, see *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018), and we agree with the district court that neither inadequate performance nor prejudice under *Strickland* was shown on this point.

We affirm the district court's judgment.